## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| FAIR HOUSING RESOURCE CENTER, INC.<br>54 S. State Street, Suite 303<br>Painesville, Ohio 44077, | CASE NO. 1:16-cv-345<br><br>JUDGE |
| Plaintiff, | |
| | **COMPLAINT AND JURY DEMAND** |
| v. | |
| DISALVATORE INSURANCE AGENCY, INC.<br>1010 W. Prospect<br>Ashtabula, Ohio 44005, | |
| Defendant. | |

## **PRELIMINARY STATEMENT**

1. Plaintiff Fair Housing Resource Center is a non-profit, fair housing organization whose resources have been expended and mission thwarted as a result of Defendant's actions.

## **JURISDICTION**

2. This is a fair housing action arising under the Fair Housing Act of 1988, 42 U.S.C. § 3601, *et seq*. Jurisdiction is conferred on this court by 42 U.S.C.A. § 3613. In addition, Plaintiff raises supplemental jurisdiction claims on R.C. § 4112.02(H) under 28 U.S.C.A. § 1367. Venue is proper in this district because all or a substantial part of the events giving rise to the claims in this action took place in the Northern District of Ohio.

## PARTIES

3. Plaintiff Fair Housing Resource Center, Inc. (hereinafter, "FHRC") is a fair housing organization whose mission is to promote fair housing in Lake County and surrounding counties in Ohio.

4. Defendant DiSalvatore Insurance Agency, Inc. ("DiSalvatore") is a domestic for-profit corporation, with its principal place of business in Ashtabula, Ohio.  The business of DiSalvatore is as a broker for insurance, including but not limited to homeowners insurance.

## FACTUAL ALLEGATIONS

5. In 2014 and 2015, FHRC conducted two sets of matched pair tests in order to test for discrimination in DiSalvatore's insurance practices.  FHRC utilized pairs of tests whereby an African-American tester sought insurance quotes for a home in a minority neighborhood, and a Caucasian tester sought insurance quotes for a closely matched home in a majority-white neighborhood.  The trained testers were chosen so that their style and manner of speaking was typical of the communities they represent, and would thus be identifiable as members of their community over the telephone.  The testers called agents of DiSalvatore, posing as prospective homeowners seeking to secure insurance coverage for homes they intended to purchase in their respective neighborhoods.

6. The homes used in each set of tests were closely matched for size, value and other factors relevant to obtaining insurance coverage. Deductibles requested by testers were identical.

7. On October 10, 2014, an African-American tester ("Tester A") contacted DiSalvatore by calling the office number and reached its agent "Alisa" in Ashtabula, OH to request a homeowner's insurance quote. Tester A spoke with Alisa on this date and provided her with the address of a property located in Ashtabula, OH, with 960 square feet, built in 1952 and priced at $105,000.  The property is located in a perceived African-American neighborhood.

2

8. Alisa asked Tester A for her name, date of birth and social security number. Tester A informed Alisa that she was not willing to provide her social security number until she knew what company she would be going with. Alisa said "ok" and proceeded to ask Tester A additional questions such as closing date, address of the property, current address, phone number and whether Tester A had insurance. Alisa also asked questions about the number of floors in the home, year built, type of heating, appraisal value, and other questions about the property. Alisa asked Tester A if she wanted sewer and drain coverage and Tester A asked her to leave it out.

9. A short time later that morning Alisa called Tester A to say the address provided "wasn't coming up." Tester A repeated the address and Alisa corrected her mistake. Alisa informed Tester A that neither of the agents was in (and that they would need to review the quote) but that the quote was coming in at $1,058.

10. Tester A then received a written quote from DiSalvatore dated October 10, 2014 provided by Erie Insurance Company for $1,043. The dwelling protection was for $153,000; other structures $30,700; personal property 115,125; family liability 100,000; Medical $1,000 per person. This quote included a charge of $86 for sewer or drain backup coverage despite Tester A's request not to include it.

11. On October 13, 2014, a Caucasian tester ("Tester B") contacted DiSalvatore through the same agent to request a verbal and written homeowner's insurance quote. Tester B spoke with Alisa on this date and provided her with the address of a property located in Conneaut, OH, with 1195 square feet, built in 1948, and priced at $87,000. Conneaut is an overwhelmingly Caucasian community.

12. Tester B was asked similar questions by Alisa as Tester A had been asked. Tester B also did not provide a social security number when requested.

13. Tester B was provided a written quote also from Erie Insurance Company dated October 13, 2014 with a premium of $770. The dwelling protection was $154,500; other structure, $30,900; personal property 115, 875; family liability, $300,000 medical $5,000. There was no sewer or drain endorsement.

14. A comparison of identical deductible quotes for the tests conducted in 2014 indicates that the cost of insurance per square foot was $1.08 for Tester A, the African-American tester, compared to $.64 for Tester B, the Caucasian tester. Even if the sewer and drain endorsement is removed from Tester A's quote, the per square foot price is only reduced by approximately 8 cents. Furthermore, the coverage given to Tester B is superior (e.g., $300,000 worth of family liability for Tester B as compared to $100,000 for Tester A).

15. A follow up test on the same insurance agency was conducted in October of 2015 using the same testing protocol.

16. On October 22, 2015, a Caucasian tester ("Tester X") contacted DiSalvatore to request a homeowner's insurance quote. Tester X spoke with "Priscilla" and provided her with the address of a property in Conneaut, Ohio, with 1316 square feet, built in 1955, and priced at $90,000. Tester X asked for a quote using a $500 deductible. Conneaut is an overwhelmingly white community.

17. Tester X was provided a verbal quote of $907 (which included sewer and drainage coverage of $5,000) and was provided a written quote via email dated that day (October 22, 2015) for the same amount. The cost of the sewer and drainage coverage was $84.

18. On October 26, 2015, an African-American tester ("Tester Y") contacted DiSalvatore to request a homeowner's insurance quote on a home. Tester Y spoke with Priscilla, and provided her with the address of a property in Ashtabula, Ohio, with 1120 square feet, built in 1954 and priced at $89,900. The property is located in a perceived African-American neighborhood. Tester Y asked

4

for a quote using a $500 deductible. After a discussion, a quote was sent dated October 26, 2015 to Tester Y for $1,584 that included a sewer and drain endorsement (also for $5,000.00).

19. A comparison of the 2015 quotes indicates that the cost of insurance per square foot was $0.68 for Tester X, the Caucasian tester, compared to $1.41 for Tester Y, the African-American tester. More revealing is the cost of insurance per $1000 of dwelling coverage, which was $.50 for Tester X, compared with $1.05 for Tester Y.

20. As a direct result of this testing, FHRC used its limited resources to conduct these tests and diverted its resources from other programs intended to ensure fair housing throughout its service area. FHRC's mission to promote fair housing was thwarted by the actions of Defendant.

**FIRST CAUSE OF ACTION**
**Federal Fair Housing Act Claims**

21. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

22. Defendant DiSalvatore impermissibly used race as a factor when applying underwriting principles and providing quotes for insurance coverage on substantially similar properties to multiple individuals seeking insurance quotes.

23. Plaintiff expended its resources, had its resources diverted and had its mission thwarted as a result of Defendant's conduct.

24. As a direct and proximate result of Defendant's unlawful conduct, Defendant violated the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.* causing harm to Plaintiff.

**SECOND CAUSE OF ACTION**
**Pendant State Fair Housing Claims**

25. Plaintiff reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

26. As a direct and proximate result of defendant's unlawful conduct, Defendant violated Ohio R.C. § 4112.01, *et seq.* causing harm to Plaintiff.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests this Court to grant the following relief:

(A) Declare that the acts of the Defendant herein complained violate the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.* and Ohio R.C. § 4112.01, *et seq.*;

(B) Order the Defendant to revise its insurance practices and policies that result in discriminatory treatment or impact to the detriment of racial minorities seeking insurance coverage, thus bringing the practices and policies into compliance with Federal and Ohio law;

(C) Mandate that Defendant and all of its agents and employees receive training in fair housing standards and equal opportunity policies instituted as a result of this suit;

(D) Award FHRC compensatory and punitive damages in an amount in excess of $25,000 together with costs and reasonable attorney fees; and

(E) Grant such additional legal and equitable relief as the Court deems just.

Respectfully submitted,

*/s/ Diane E. Citrino*
Diane E. Citrino (0062832)
Kathleen A. Nitschke (0073397)
**GIFFEN & KAMINSKI LLC**
1300 East Ninth Street, Suite 1600
Cleveland, Ohio 44114
Phone: (216) 621-5161
Fax: (216) 621-2399
Email: dcitrino@thinkgk.com
knitschke@thingk.com
***Attorney for Plaintiff Fair Housing Resource Center, Inc.***

## JURY DEMAND

A jury is hereby demanded on all legal issues.

>*/s/ Diane E. Citrino*
>Diane E. Citrino